IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

CASE NO. 23-3336

---

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

JAMES MAJORS
Defendant-Appellant.

---

On Appeal from the United States District Court
for the Northern District of Ohio

---

BRIEF OF PLAINTIFF-APPELLEE

---

REBECCA C. LUTZKO
United States Attorney
Northern District of Ohio

/s/ Matthew B. Kall
Matthew B. Kall
Assistant U.S. Attorney
801 West Superior Avenue, Suite 400
Cleveland, OH  44113
(216) 622-3915
Matthew.B.Kall@usdoj.gov

Counsel for Plaintiff-Appellee

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT REGARDING ORAL ARGUMENT .......................................... viii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES..........................................................2

STATEMENT OF THE CASE............................................................3

    I.     Introduction. .........................................................3

    II.    Factual Background....................................................4

          A.    Background on investigation. ...................................4

          B.    Officers execute a search warrant at Majors' residence. ...........5

          C.    Majors is arrested with drugs, drug-trafficking paraphernalia, and two firearms....................................6

    III.   Procedural History....................................................8

          A.    Charges.....................................................8

          B.    Pretrial Notice. .............................................9

          C.    Verdict....................................................11

          D.    Presentence Report..........................................11

          E.    Sentencing. ................................................12

SUMMARY OF THE ARGUMENT ......................................................14

ARGUMENT .....................................................................16

    I.     The district court properly admitted a qualified narcotics investigator's testimony regarding the link between drug trafficking and firearms...............................16

          A.    Standard of Review..........................................16

B.  Because juries do not understand drug traffickers' operating methods, opinion testimony experienced investigators may testify about them. ........................................16

II.  The district court properly admitted evidence relating to the origins of the investigation and Majors' intent to distribute. ........20

A.  Standard of Review. ..................................................................20

B.  The district court properly admitted testimony about the investigation's origin and Majors' intent to distribute. .......21

III.  No prosecutorial misconduct occurred. ................................................26

A.  Standard of Review. ..................................................................26

B.  Requesting that the district court find a witness to be an expert was not flagrant serious behavior constituting reversible prosecutorial misconduct. ........................................27

IV.  Cumulative errors do not require a new trial. .....................................32

V.  The district court properly included two criminal history points because Majors was on probation when he committed his federal crimes. ...............................................................................33

A.  Standard of Review. ..................................................................33

B.  Majors could not collaterally attack the validity of his state probation in his federal sentencing hearing. ......................34

CONCLUSION ........................................................................................38

CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION ................39

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..............40

# TABLE OF AUTHORITIES

## Federal Cases

Bearden v. Georgia, 461 U.S. 660 (1983) ................................................................36

Custis v. United States, 511 U.S. 485 (1994) ................................................... 34, 35

Gall v. United States, 552 U.S. 38 (2007) ...............................................................33

United States v. Aguilar-Diaz, 626 F.3d 265 (6th Cir. 2010)........................... 35, 37

United States v. Aguwa, 123 F.3d 418 (6th Cir. 1997) ...........................................23

United States v. Arnott, 704 F.2d 322 (6th Cir. 1983) ............................................18

United States v. Ayoub, 498 F.3d 532 (6th Cir. 2007)............................................25

United States v. Balogun, 463 F. App'x 476 (6th Cir. 2012)..................................30

United States v. Bender, 265 F.3d 464 (6th Cir. 2001) ...........................................17

United States v. Bilderbeck, 163 F.3d 971 (6th Cir. 1999) .....................................25

United States v. Bonds, 48 F.3d 184 (6th Cir. 1995)...............................................34

United States v. Brown, 888 F.3d 829 (6th Cir. 2018)............................................20

United States v. Campbell, 317 F.3d 597 (6th Cir. 2003) .......................................18

United States v. Carney, 387 F.3d 436 (6th Cir. 2004) ...........................................25

United States v. Clay, 667 F.3d 689 (6th Cir. 2012) ...............................................25

United States v. Cleveland, 907 F.3d 423 (6th Cir. 2018)........................................18

United States v. Collins, 799 F.3d 554 (6th Cir. 2015) ..................................... 20, 21

United States v. Cromer, 389 F.3d 662 (6th Cir. 2004)...........................................23

United States v. Dickens, 438 F. App'x 364 (6th Cir. 2011) ...................................33

United States v. Donadeo, 910 F.3d 886 (6th Cir. 2018) ........................................33

United States v. Dunnican, 961 F.3d 859 (6th Cir. 2020) .......................................17

United States v. Francis, 170 F.3d 546 (6th Cir. 1999) ..........................................27

United States v. Gibbs, 506 F.3d 479 (6th Cir. 2007) .............................................22

United States v. Goins, 186 F. App'x 586 (6th Cir. 2006) .......................................33

United States v. Green, 305 F.3d 422 (6th Cir. 2002) .............................................26

United States v. Hadley, 431 F.3d 484 (6th Cir. 2005) ...........................................20

United States v. Hall (Clayton), 20 F.4th 1085 (6th Cir. 2022) ..............................30

United States v. Hall (Frank), 531 F.3d 414 (6th Cir. 2008) ..................................34

United States v. Hardy, 643 F.3d 143 (6th Cir. 2011) ............................................25

United States v. Harris, 192 F.3d 580 (6th Cir. 1999) ............................................16

United States v. Henry, 545 F.3d 367 (6th Cir. 2008) ............................................26

United States v. Hill, 142 F.3d 305 (6th Cir. 1998) ...............................................30

United States v. Hornbeak, 575 F. App'x 618 (6th Cir. 2014) ...............................18

United States v. Jackson, 55 F.3d 1219 (6th Cir. 1995) ..........................................30

United States v. Jaffal, 79 F.4th 582 (6th Cir. 2023) ..............................................30

United States v. Jeross, 521 F.3d 562 (6th Cir. 2008) .............................................33

United States v. Johnson (Michael), 488 F.3d 690 (6th Cir. 2007)...... 27, 28, 31, 32

United States v. Johnson (Timothy), 27 F.3d 1186 (6th Cir. 1994) .......................24

United States v. Jones, 55 F.4th 496 (6th Cir. 2022)...............................................18

United States v. Kilpatrick, 798 F.3d 365 (6th Cir. 2015).......................................16

<u>United States v. King</u>, 339 F. App'x 604 (6th Cir. 2009)........................................31

<u>United States v. Lopez-Medina</u>, 461 F.3d 724 (6th Cir. 2006) .............................17

<u>United States v. Mack</u>, 729 F.3d 594 (6th Cir. 2013)........................................24

<u>United States v. Mackey</u>, 265 F.3d 457 (6th Cir. 2001).........................................30

<u>United States v. Martin</u>, 897 F.2d 1368 (6th Cir. 1990) ................................... 22, 23

<u>United States v. Myers</u>, 123 F.3d 350 (6th Cir. 1997)........................................25

<u>United States v. Parks</u>, 89 F.3d 570 (9th Cir. 1996)................................................37

<u>United States v. Parrish</u>, 915 F.3d 1043 (6th Cir. 2019) .........................................34

<u>United States v. Perry</u>, 438 F.3d 642 (6th Cir. 2006) .............................................25

<u>United States v. Pugh</u>, 405 F.3d 390 (6th Cir. 2005)................................................20

<u>United States v. Rayyan</u>, 885 F.3d 436 (6th Cir. 2018).........................................34

<u>United States v. Rivera</u>, 900 F.2d 1462 (10th Cir. 1990) .........................................32

<u>United States v. Robinson</u>, 357 F. App'x 677 (6th Cir. 2009) ...............................32

<u>United States v. Rodriguez</u>, 882 F.2d 1059 (6th Cir. 1989) ....................................30

<u>United States v. Swafford</u>, 385 F.3d 1026 (6th Cir. 2004).....................................17

<u>United States v. Thomas</u>, 74 F.3d 676 (6th Cir. 1996)...........................................17

<u>United States v. Trujillo</u>, 376 F.3d 593 (6th Cir. 2004).................................. 24, 32

<u>United States v. Vonner</u>, 516 F.3d 382 (6th Cir. 2008).........................................18

<u>United States v. Warman</u>, 578 F.3d 320 (6th Cir. 2009) .........................................22

<u>United States v. Wheeler</u>, 330 F.3d 407 (6th Cir. 2003) .........................................34

<u>United States v. White</u>, 563 F.3d 184 (6th Cir. 2009)...........................................17

**Federal Statutes**

18 U.S.C. § 924(c)(1)(A)(i) ................................................................8

18 U.S.C. § 3231 ..............................................................................1

18 U.S.C. § 3582(c)(2) ....................................................................37

18 U.S.C. § 3742(a) ..........................................................................1

21 U.S.C. § 841(a)(1) ........................................................................8

21 U.S.C. § 841(b)(1)(C) ..................................................................8

21 U.S.C. § 856(a)(2) ........................................................................8

28 U.S.C. § 1291 ...............................................................................1

**Federal Rules**

Fed. R. App. P. 34(a)(2)(C) ........................................................... viii

Fed. R. Evid. 401 ...........................................................................22

Fed. R. Evid. 402 ...........................................................................21

Fed. R. Evid. 403 ...........................................................................25

Fed. R. Evid. 404(b)........................................................... passim

Fed. R. Evid. 404(b)(1) ..................................................................24

Fed. R. Evid. 404(b)(2) ..................................................................24

Fed. R. Evid. 702 ...........................................................................16

**U.S. Sentencing Guidelines**

U.S.S.G. § 1B1.10(d) ...............................................................................37

U.S.S.G. § 4A1.1(d) ................................................................................37

U.S.S.G. § 4A1.1(e) ................................................................................37

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellee, the United States of America, believes that the briefs and record adequately present the facts and legal argument and that oral argument would not aid this Court's decision. The legal issues involved are well-settled, and the testimony and other evidence was not complicated. The district court's rulings and its reasoning are straightforward, and oral argument would be unlikely to elucidate any issue beyond what is stated in the parties' written briefs. Therefore, the government recommends that this Court decide the case on the briefs under Federal Rule of Appellate Procedure 34(a)(2)(C).

# JURISDICTIONAL STATEMENT

The district court had jurisdiction in this criminal case under 18 U.S.C. § 3231. (R. 1: Indictment, PageID 1-4). The court entered judgment against Defendant-Appellant James Majors on May 10, 2023. (R. 69: Judgment, PageID 395-401).

Majors filed a timely notice of appeal on May 17, 2023. (R. 71: Notice of Appeal, PageID 406). This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

# <u>STATEMENT OF THE ISSUES</u>

I.     Did the district court properly exercise its discretion when it followed this Court's long-standing practice of allowing qualified narcotics investigators to offer opinion testimony to assist the jury's understanding of the illegal drug trade?

II.    Did the district court properly exercise its discretion when it admitted evidence regarding the investigation's origins and evidence that Majors intended to distribute the drugs that he possessed?

III.    Did asking the court to certify that its experienced drug investigator was an expert rise to the level of flagrant and reversible prosecutorial misconduct, where the remark was isolated, the court did not so certify the witness, and other precautions were taken to ensure the jury did not believe the witness's testimony was entitled to special consideration?

IV.    Did Majors demonstrate numerous and serious cumulative errors that were so prejudicial as to render his trial fundamentally unfair?

V.    Is Majors permitted to collaterally attack a state probationary sentence at his federal sentencing hearing?

**STATEMENT OF THE CASE**

## I.     Introduction.

Defendant-Appellant James Majors was convicted of possessing various drugs with the intent to distribute them and carrying a firearm during and in relation to drug trafficking.  Overwhelming evidence established that Majors possessed the drugs and firearms involved.  In fact, when he testified, he admitted to possessing the firearms and most of the drugs.  And significant other evidence— including his admissions, evidence of prior drug-trafficking activities, and his possessing of drug-trafficking tools—proved his intent to distribute.

In this appeal, Majors raises evidentiary challenges, a prosecutorial-misconduct claim, and one challenge to his criminal history score.  The district court properly admitted evidence from a trained narcotics investigator regarding common practices of drug dealers under Rule 702.  It properly admitted evidence regarding the investigation's origins as background evidence.  It also properly admitted evidence about Majors' prior drug-trafficking activities under Rule 404(b) .  While the government should not have sought to have the court declare its investigator as an expert, that mistake did not rise to the level of reversible prosecutorial misconduct, because it was an isolated incident, and the court properly minimized the request's impact.

Finally, the district court's criminal history calculation was correct. Majors is not permitted to collaterally attack a prior criminal judgment in a federal sentencing proceeding. Because Majors was serving a term of probation when he committed the offenses in this case, the court properly assessed criminal history points. Therefore, this Court should affirm Majors' convictions and sentence.

## II.    Factual Background

### A.    Background on investigation.

Trial testimony established that James Majors was a street-level drug dealer who carried a firearm for his protection in Cleveland. The criminal investigation started following a tip from a confidential informant to DEA investigators. (R. 77: Alcantara Trans., PageID 742-43). After receiving this tip, the informant successfully purchased a small quantity of methamphetamine from Majors in December of 2021 for $350. (Id., PageID 746-53).

Investigators followed standard procedures. First, they searched the informant to ensure that he did not have any drugs, money, or other contraband. (Id.). They provided him with $350 to purchase the drugs and monitored his interaction with Majors. (Id.). He wore a recording device. (Id.). Some investigators conducted surveillance of Majors leaving his residence, while others watched his meeting with the informant. (Id.). After the transaction occurred, investigators followed Majors back to his residence and observed several people

arrive and quickly depart, which is consistent with drug customers.  (Id., PageID 754).

Officers attempted to have the informant make a second controlled purchase, but it was not successful.  (Id., PageID 754-57).  After taking additional steps to verify that Majors lived at the residence and used the telephone number that the informant had called, investigators obtained a search warrant for Majors' residence.  (Id., PageID 756-57).

### B.    Officers execute a search warrant at Majors' residence.

Officers executed the search warrant at Majors' residence on January 5, 2022.  (R. 76: Sauterer Trans., PageID 603-04).  Inside the garage, they found numerous items consistent with drug trafficking, on a table.  (Id., PageID 613-19).  A Pyrex glass, commonly used for cooking powder cocaine and crack cocaine was found in a work area near a microwave oven.  (Id.).  Officers also found baking soda commonly used for cooking crack, Ziploc bags commonly used to package drugs, and an electronic scale in the same area.  (Id.).  Laboratory testing confirmed that the Pyrex glass contained 3.07 grams of powder cocaine.  (R. 76: Andurs Trans., PageID 579).  Other plastic bags contained smaller quantities of cocaine.  (Id., PageID 574, 576-77).  Several of the other items from the garage table—including three electronic scales—contained narcotics residue.  (Id., PageID 573, 575, 578-79).

Majors, however, was not at the residence when officers searched it. But he had previously set up a video surveillance system that allowed him to monitor the house and would have allowed him to see the search when it occurred. (R. 77: Alcantara Trans., PageID 764; R. 77: James H. Majors Trans., PageID 828-29; R. 78: Levy Trans., PageID 855). His whereabouts was unknown until January 30, 2022. (R. 77: Quinones Trans., PageID 649-52).

### C. Majors is arrested with drugs, drug-trafficking paraphernalia, and two firearms.

On January 30th, a concerned person notified Cleveland officers that someone—later identified as Majors—was sitting unconscious in his car at a nearby cemetery. (Id.). The officers located the car and approached. (Id., PageID 652-56). Majors was either asleep or unconscious in the driver's seat, with an open wine glass within reach. (Id.). Officers woke him up, asked him to exit the car, and conducted a protective patdown. (Id.). Majors gave officers a fake name. (R. 77: Quinones Trans., PageID 665-67; R. 77: Rossi Trans., PageID 677-79).

Majors had a loaded .22 Magnum handgun in his jacket pocket. (Id., PageID 656-59). He also had a loaded 9mm handgun in the car, hidden under some clothing. (R. 77: Baon Trans., PageID 716-17). The 9mm handgun had a tactical flashlight attached to its frame. (Id., PageID 717). At trial, Majors admitted possessing both guns. (R. 78: Majors Trans., PageID 893-94).

Majors also had multiple bags containing controlled substances with him in the car. On the dashboard, Majors had a small pink bag that contained 0.1 grams of cocaine base. (Id., PageID 657-58, 667-68; R. 77: Baon Trans., PageID 719-21; R. 76: Andurs Trans., PageID 584). Inside hidden compartments of a lint roller and an aerosol can, Majors hid separately packaged quantities of methamphetamine, crack cocaine, and a heroin/fentanyl mixture. The lint roller contained a total of 15.17 grams of methamphetamine, in 17 individual packages. (R. 77: Falzini Trans., PageID 689; R. 77: Baon Trans., PageID 720-21; R. 76: Andurs Trans., PageID 581-82). The aerosol can's hidden compartment contained approximately 3 grams of crack cocaine. (R. 77: Baon Trans., PageID 721-22; R. 76: Andurs Trans., PageID 587-88). It also held a plastic bag containing a 2.23-gram mixture of heroin, fentanyl, 4-ANPP, and methamphetamine. (R. 77: Baon Trans., PageID 718, 722-23; R. 76: Andurs Trans., PageID 587).

At trial, Majors admitted to possessing the crack cocaine and heroin/fentanyl mixture that was hidden in the aerosol can, but he denied knowing about the methamphetamine that was hidden in the lint roller. (R. 78: Trial Trans., PageID 897-98, 901). He also admitted that he had previously distributed cocaine, suboxone, Percocet, and Xanax to one of his friends, "Vuk." (Id., PageID 886). And he admitted to giving the confidential informant a half-ounce of methamphetamine in return for $350. (Id., PageID 867-70). According to Majors,

however, the informant had given him the drugs first, and then later, Majors merely returned the drugs to him.  (Id.).

## III.    Procedural History

### A.    Charges.

A grand jury charged Majors with six crimes.  (R. 1: Indictment, PageID 1-4).  Two counts related to evidence officers seized while executing the search warrant at the residence on January 5, 2022:

| Count | Description | Statute |
|-------|-------------|---------|
| 1 | Possession of cocaine with the intent to distribute | 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) |
| 6 | Maintaining a drug-involved premises | 21 U.S.C. § 856(a)(2) |

(Id.).  The other four counts related to evidence that Majors possessed in his car on January 30, 2022:

| Count | Description | Statute |
|-------|-------------|---------|
| 2 | Possession of fentanyl with the intent to distribute | 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) |
| 3 | Possession of cocaine base with the intent to distribute | 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) |
| 4 | Possession of methamphetamine with the intent to distribute | 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) |
| 5 | Using or carrying a firearm during and in relation to a drug trafficking crime | 18 U.S.C. § 924(c)(1)(A)(i) |

(Id.).

## B.     Pretrial Notice.

Before trial, the government filed a pretrial notice stating that it would introduce expert testimony from DEA Task Force Officer Jose Alcantara, who had specialized knowledge regarding drug traffickers' <u>modus operandi</u>. (R. 42: Notice, PageID 150-58).

Further, the government provided pretrial notice that it intended to introduce evidence regarding the controlled buy that preceded the search warrant. (R. 47: Trial Brief, PageID 192-95). The government stated that such evidence was relevant to why officers began investigating Majors, and therefore, was not Rule 404(b) evidence. Rather, it was intrinsic evidence necessary to fully explain its investigation to the jury. (<u>Id.</u>).

In the same trial brief, the government also notified Majors that it intended to introduce evidence that he had previously manufactured, sold, and used drugs at his house. (<u>Id.</u>, PageID 196-200). The government described the evidence and stated that it was relevant to show that Majors had the intent to distribute the drugs that he possessed. (<u>Id.</u>). Majors did not file a response, trial brief, or motion in limine before trial challenging this evidence.

At trial, however, Majors objected when the government introduced this evidence. After the government introduced testimony about Alcantara's training and experience as a trained narcotics investigator, but before offering opinion

testimony, it asked the court to declare him to be an expert witness. (R. 77:
Alcantara Trans., PageID 737). The court did not do so. Instead, it merely told the
prosecutor, "[y]ou may proceed." (Id.). Majors then objected. (Id.). Alcantara
was never referred to as an expert thereafter during the evidence or closing
argument.

When the government introduced evidence regarding the controlled
narcotics purchase that led to the search warrant, Majors objected. (Id., PageID
743). After hearing argument outside the jury's presence, (id., PageID 743-46), the
court permitted the government to present the evidence. Before the testimony,
however, the court gave the jury the following limiting instruction:

> And that is we're allowing this type of testimony, the
> defendant is not charged with the sale at all, but it will
> put everything in context to explain how the police or the
> law enforcement got a search warrant and subsequently
> searched the home, and so it's used for that purpose only,
> not for any other purpose, okay?

(Id.). It also instructed the jury during the closing instructions, without objection,
about the limited purpose of "other act" evidence:

> THE COURT: You also heard testimony from both the
> government and the defense about some alleged other act
> or potential other act of the defendant. And I gave that
> instruction before the testimony was presented in the
> government's case-in-chief.
>
> But you have heard testimony that the defendant may
> have committed another crime or other acts other than the
> ones charged in this indictment. If you do find that the

defendant did commit that crime or that act, you can consider that evidence only as it relates to the government's claim as to the defendant's identity or as to the defendant's intent to distribute controlled substances. You must not consider it for any other purpose.

Remember that the defendant is on trial only for the crimes that's charged here in this indictment. And do not return a guilty verdict unless the government proves the crimes charged in this indictment beyond a reasonable doubt.

(R. 78: Jury Instructions, PageID 936-37).

## C.    Verdict

Following a three-day trial, the jury convicted Majors of possessing the drugs in the car with the intent to distribute, and of using or carrying the firearm during and in relation to drug trafficking. (R. 59: Verdict, PageID 309-14). It acquitted him of the two counts relating to the evidence in the residence. (Id.).

## D.    Presentence Report

In the presentence investigation report ("PSR"), Probation recommended that the district court find that the total converted drug weight was 341.65 kilograms, leading to a base offense level 26. (R. 64: Final PSR, PageID 352). It also recommended that the court impose a two-level increase for maintaining a premises for the purpose of drug manufacturing or distribution. (Id.).

Majors had a lengthy criminal history, but seven of his nine previous adult convictions were too old to qualify for Guidelines' criminal history points. (Id.,

PageID 353-56).  Some of them were for serious offenses, such as drug abuse, drug possession, and attempted weapons possession under disability.  He received one criminal history point for operating a vehicle while intoxicated ("OVI") and another for endangering children.  (Id., PageID 356).  He was on probation for the OVI offense in 2019, but he failed to appear for a court hearing.  Thus, he remained on probation through the time of the federal offenses in 2022.  (Id.). Accordingly, he received two additional criminal history points.  (Id.).  The four total criminal history points placed him in category III.  (Id.).

Majors did not object to the criminal history score, but he did object to the drug quantity and enhancement for maintaining a drug-involved premises.  (Id., PageID 368-70).  Before sentencing, however, he filed a sentencing memorandum arguing that his criminal history score over-represented the seriousness of his history.  He asked the court not to include his OVI conviction, claiming that he only remained on probation due to "a financial issue," and noting that the probationary term was later terminated.  (R. 66: Majors Sentencing Mem., PageID 380-81).  He submitted no evidence supporting this claim.

### E.   Sentencing.

At the sentencing hearing, after considering arguments from Majors' attorney and his allocution, (R. 74: Sentencing Trans., PageID 414-28), the court found that criminal history category III was appropriate.  (Id., PageID 428-30).  It

did not, however, hold him accountable for the drugs in the residence or include an adjustment for maintaining a drug-involved premises.  (Id., PageID 430-31). Therefore, it found that the offense level was 24, which led to a 63-to-78-month Guideline range.  (Id.).  The court imposed a 78-month sentence for the drug-trafficking counts, consecutive to a mandatory 60-month sentence for using or carrying a firearm during drug trafficking, for a total of 138 months.  (Id., PageID 431-32).

# SUMMARY OF THE ARGUMENT

This Court should affirm the convictions and sentence in this case. The district court's evidentiary decisions were correct, and it properly calculated Majors' criminal history.

The district court properly admitted testimony from a qualified narcotics investigator regarding the link between drug trafficking and firearms. Because drug trafficking is not within the experience of most jurors, courts routinely permit such witnesses to testify as experts. The government's witness was well-qualified, and his testimony assisted the jury understand the methods that many drug dealers use. Thus, the court properly admitted this evidence.

The court also properly admitted evidence regarding the investigation's origins and a controlled drug purchase from Majors. Evidence regarding the investigation's origin was relevant <u>res gestae</u> evidence that showed the jury why officers focused on Majors and obtained a search warrant for his residence. And evidence regarding Majors' previous drug sale to a confidential informant was properly admitted under Rule 404(b), because it was relevant to Majors' intent to distribute drugs. It was undisputed that this controlled-buy occurred. It was admitted for a permissible purpose: intent. And its probative value was not substantially outweighed by the danger of unfair prejudice. Thus, the court's evidentiary rulings were correct.

Majors has not demonstrated that a single remark rose to the level of prosecutorial misconduct requiring reversal. While the prosecutor should not have requested that the district court certify its investigator as an expert witness in the jury's presence, no harm occurred. The district court declined to do so, and the witness was never referred to as an expert witness again. The remark was isolated, occurring just once during a three-day trial. It did not influence the jury or prejudice Majors. Given the strength of the evidence in this case, this remark cannot be considered flagrant prosecutorial misconduct requiring reversal.

Finally, the district court properly calculated Majors' criminal history. He was on probation at the time he committed the offenses in January 2022. Although he attempted to attack his state probationary sentence at his federal sentencing hearing, he was not permitted to do so. A defendant cannot collaterally attack the validity of a prior conviction or sentence at sentencing unless the prior conviction was uncounseled. That was not the case. Moreover, Majors submitted no evidence to support his claim. Therefore, the district court properly assessed two criminal history points because Majors was on probation when he committed the instant offenses.

For these reasons, this Court should affirm Majors' convictions and sentence.

# ARGUMENT

**I.** **The district court properly admitted a qualified narcotics investigator's testimony regarding the link between drug trafficking and firearms.**

### A. Standard of Review.

This Court reviews challenges to the admissibility of expert or opinion testimony for an abuse of discretion. United States v. Harris, 192 F.3d 580, 588 (6th Cir. 1999).

### B. Because juries do not understand drug traffickers' operating methods, opinion testimony experienced investigators may testify about them.

The district court did not abuse its discretion when it permitted TFO Alcantara to offer testimony as an opinion witness under Federal Rule of Evidence 702. A witness with specialized knowledge, skill, training, or experience may testify by way of opinion if it will "help the trier of fact to understand the evidence or determine a fact in issue," and it is based on sufficient facts, is the product of reliable principles, and the witness has applied principles and methods to the facts of the case. Id.

Courts frequently qualify law enforcement officers as expert witnesses under Federal Rule of Evidence 702 to interpret evidence relating to the illegal drug trade, including slang, street language, and jargon. United States v. Kilpatrick, 798 F.3d 365, 379 (6th Cir. 2015); Harris, 192 F.3d at 588-89. "Courts have

overwhelmingly found police officers' expert testimony admissible where it will aid the jury's understanding of an area, such as drug dealing, not within the experience of the average juror." United States v. Thomas, 74 F.3d 676, 682 (6th Cir. 1996); see also United States v. Lopez-Medina, 461 F.3d 724, 742 (6th Cir. 2006); United States v. Bender, 265 F.3d 464, 471-72 (6th Cir. 2001).

This Court "regularly allows qualified law enforcement personnel to testify on characteristics of criminal activity, as long as appropriate cautionary instructions are given, since knowledge of such activity is generally beyond the understanding of the average layman." United States v. Swafford, 385 F.3d 1026, 1030 (6th Cir. 2004); United States v. Jaffal, 79 F.4th 582, 603 (6th Cir. 2023); United States v. Dunnican, 961 F.3d 859, 875-76 (6th Cir. 2020). This Court has long recognized that "testimony regarding tools of the trade has become utterly routine in drug distribution cases, particularly when we review the district court's ruling for abuse of discretion." United States v. White, 563 F.3d 184, 190-91 (6th Cir. 2009).

Majors specifically challenges whether it was appropriate for the expert to testify that drug traffickers frequently possess firearms. This Court has repeatedly found that qualified narcotics investigators may testify that it is common for drug traffickers to have firearms to protect themselves and their valuable products. See, e.g., Swafford, 385 F.3d at 1030; United States v. Hornbeak, 575 F. App'x 618,

621 (6th Cir. 2014); United States v. Flowers, 476 F. App'x 55, 59 (6th Cir. 2012).

On multiple occasions, this Court has observed that firearms are tools of the drug

trafficking trade. United States v. Cleveland, 907 F.3d 423, 436 (6th Cir. 2018);

United States v. Campbell, 317 F.3d 597, 609 (6th Cir. 2003); United States v.

Arnott, 704 F.2d 322, 325-26 (6th Cir. 1983). from A qualified investigator's

testimony proving that point was proper.

The government's closing argument also appropriately referred to such

testimony. Notably, Majors did not object to any portion of the government's

closing argument, so his complaints now are reviewed only for plain error.

United States v. Jones, 55 F.4th 496, 502-03 (6th Cir. 2022). Plain error requires

proof of an error, that was plain or obvious, that affected the defendant's

substantial rights, and affected the fairness, integrity, or public reputation of the

trial. United States v. Vonner, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). This

Court gives parties "wide latitude" during closing arguments. Jones, 55 F.4th at

502-03.

Majors' challenge to the closing argument does not clear the first hurdle,

because the closing arguments properly summarized this testimony and asked the

jury to draw reasonable inferences from it.

> There is some testimony from Alcantara about what to
> make of the presence of a firearm and drugs, and he
> explained that drug dealers don't want to get robbed and
> that they carry firearms. The defendant himself had

> made a statement that he had been robbed before, but in his assessment the firearms here had no relationship obviously.
>
> Use your reason and common sense to evaluate those statements.

(R. 78: Government Closing, PageID 963). That argument was proper. It accurately summarized the testimony and merely asked the jury to use reason and common sense to evaluate it when determining whether Majors used or carried the firearm during and in relation to drug trafficking, as charged in Count 5. No error occurred, plain or otherwise.

True, the prosecutor did summarize the same testimony again in the closing argument. Nothing prohibits that. The prosecutor repeated that point because she was addressing a different count—Count 6—which charged Majors with maintaining a premises for the purposes of drug trafficking. The prosecutor argued simply, "And you also have the testimony from TFO Alcantara that the carrying the firearm is to prevent from getting robbed from something that's valuable." (Id., PageID 966). Again, that was an accurate summary of the evidence, and it was argued for a permissible purpose. No error occurred, plain or otherwise.

Because the government was permitted to have a qualified narcotics investigator testify that drug dealers frequently carry firearms to protect their drug stash or proceeds, no error occurred. Admitting that testimony was proper, not a

discretionary abuse.  And the government's arguments regarding it were also proper.  Therefore, this Court should reject Majors' arguments on this issue.

**II.**    **The district court properly admitted evidence relating to the origins of the investigation and Majors' intent to distribute.**

### A.    Standard of Review.

This Court reviews the district court's evidentiary rulings only for an abuse of discretion.  United States v. Pugh, 405 F.3d 390, 397 (6th Cir. 2005).  This standard applies to whether a district court properly admitted res gestae evidence, United States v. Brown, 888 F.3d 829, 835 (6th Cir. 2018), and to Rule 404(b) evidence.  United States v. Ray, 549 F. App'x 428, 430 (6th Cir. 2013).

"A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact."  Pugh, 405 F.3d at 397 (citation and quotation marks omitted).  To find clear error, this Court must be "firmly convinced that a mistake has been made."  Id.

While Majors objected to this evidence in the district court, he never asserted a claim that the evidence violated his Confrontation Clause rights.  This Court reviews Confrontation Clause arguments, which are raised for the first time on appeal, only for plain error.  United States v. Collins, 799 F.3d 554, 584-85 (6th Cir. 2015); United States v. Hadley, 431 F.3d 484, 498 (6th Cir. 2005) (reviewing

a Confrontation Clause claim for plain error because "Defendant raised only a hearsay objection to [the contested] statements at trial, and did not challenge their admissibility on constitutional grounds"). To satisfy plain-error review, there must be (1) error, (2) that was plain, and (3) that affected Majors' substantial rights. Collins, 799 F.3d at 584-85. If those three conditions are met, this Court can exercise discretion to reverse the conviction if the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. Id.

### B. The district court properly admitted testimony about the investigation's origin and Majors' intent to distribute.

The district court did not abuse its discretion—or commit any error whatsoever—when it permitted the government to introduce evidence regarding an informant's tips and a previous controlled buy. This was properly admitted non-hearsay evidence introduced to explain how the investigation started, why investigators focused on Majors, and how they were able to obtain a search warrant for his residence. It was also properly admitted evidence because it was relevant to Majors' intent to distribute—a disputed element of several charged counts.

Under Federal Rule of Evidence 402, relevant evidence is admissible, unless prohibited by the Constitution, a statute, other evidence rules, or Supreme Court rules. Fed. R. Evid. 402. Evidence is relevant if it has any tendency to make a fact

more or less probable, and that fact is of consequence to the case. Fed. R. Evid. 401.

This Court has repeatedly found that testimony regarding how an investigation started is relevant and admissible. For example, in United States v. Gibbs, 506 F.3d 479, 486-87 (6th Cir. 2007), an agent testified that an informant told him that the defendant had some long guns, shotguns, or rifles hidden in a basement bedroom. The government offered this evidence to show why they searched the defendant's bedroom, which ultimately resulted in a handgun's seizure. This Court held that such testimony was relevant "background evidence" about the investigation, and the district court did not abuse its discretion in permitting it. Id.; see also United States v. Martin, 897 F.2d 1368, 1371 (6th Cir. 1990) ("In some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay.").

Similarly, in United States v. Warman, 578 F.3d 320, 346 (6th Cir. 2009), the defendant challenged testimony from agents that summarized information they had received from informants. Making the same argument that Majors makes, Warman claimed that such evidence was impermissible hearsay and violated the Sixth Amendment's Confrontation Clause. This Court disagreed and held that "[e]vidence that is provided merely by way of background or is offered only to

explain how certain events came to pass or why law enforcement officers took the actions they did is not offered for the truth of the matter asserted" and thus cannot trigger a Confrontation Clause violation. Id. (internal quotations and citations omitted).

This Court has reached the same conclusion in numerous other cases. See, e.g., United States v. Cromer, 389 F.3d 662, 676 (6th Cir. 2004) (confidential informant's statements that were offered by case agent to explain why they began investigation did not violate Confrontation Clause); United States v. Aguwa, 123 F.3d 418, 421 (6th Cir. 1997) (agents' testimony summarizing information from confidential informant was not hearsay because it was offered to explain how and why the agents came to be involved with the defendant); Martin, 897 F.2d at 1371-72 (6th Cir. 1990) (Confrontation Clause not implicated where assertions not offered for their content, but merely to explain why government commenced investigation).

Evidence regarding why the investigation focused on Majors was directly relevant to the contested trial issues. In his opening statement, Majors implied that investigators should have focused on other individuals—such as his father or other individuals present at the residence—instead of him. (R. 76: Majors Opening, PageID 521-22). It was therefore entirely appropriate for the government to

respond with evidence showing why the investigation focused on Majors, including the informant's tip and the controlled purchase.

Evidence regarding a previous controlled drug purchase was also directly relevant to one of the contested elements at trial: intent. The indictment charged Majors with knowing possession of controlled substances with the intent to distribute. Thus, the government had to prove that Majors had the intent to distribute the controlled substances that he possessed. Because Majors was charged with a specific intent crime, Rule 404(b) evidence was admissible to prove his intent. See United States v. Trujillo, 376 F.3d 593, 605 (6th Cir. 2004); see also United States v. Johnson (Timothy), 27 F.3d 1186, 1192 (6th Cir. 1994) ("In prosecuting specific intent crimes, prior acts evidence may often be the only method of proving intent.").

Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 404(b)(2) explains, however, that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

In analyzing Rule 404(b) evidence's admissibility under the "three-step analysis," United States v. Mack, 729 F.3d 594, 601 (6th Cir. 2013) (citing United

States v. Clay, 667 F.3d 689, 693 (6th Cir. 2012)), the first inquiry is whether there is sufficient evidence that the other act actually occurred.  Id.  Second is "whether the evidence is probative of a material issue other than character."  Id.  Third, courts must consider whether the evidence's risk of unfair prejudice substantially outweighs its probative value, under Rule 403.  United States v. Perry, 438 F.3d 642, 648 (6th Cir. 2006).  The evidence is viewed in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect. Id.; see also United States v. Carney, 387 F.3d 436, 451 (6th Cir. 2004).

Applying those principles, the district court properly admitted evidence of the previous controlled purchase.  It was undisputed that this occurred.  Indeed, although Majors characterized it differently, he admitted distributing a half-ounce of methamphetamine and receiving $350.  (R. 78: Majors Trans., PageID 867-70). Thus, the first Rule 404(b) factor was satisfied.

So was the second factor.  This Court has "repeatedly recognized that prior drug-distribution evidence is admissible [under Rule 404(b)] to show intent to distribute."  United States v. Hardy, 643 F.3d 143, 150-51 (6th Cir. 2011); United States v. Ayoub, 498 F.3d 532, 547-48 (6th Cir. 2007); United States v. Bilderbeck, 163 F.3d 971, 977-78 (6th Cir. 1999); United States v. Myers, 123 F.3d 350, 363-64 (6th Cir. 1997).  Thus, the evidence regarding the previous

controlled buy was admitted for a proper purpose. It was probative of what Majors intended to do with the drugs.

Finally, the district court reasonably weighed the probative value of the evidence against the risk of unfair prejudice. It did so before trial, when the government summarized the evidence. (R. 76: Trial Trans., PageID 511-13). The court also invited Majors to raise an objection when the testimony was presented. (Id., PageID 513). Majors did so, and again, the court found that such evidence was proper, but it agreed to give a limiting instruction. (R. 77: Trial Trans., PageID 744-47). Thus, the court complied with the required procedures under Rule 404(b).

For these reasons, the district court properly admitted evidence regarding the origins of the investigation and evidence regarding Majors' controlled sale of drugs to an informant.

## III.   No prosecutorial misconduct occurred.

### A.   Standard of Review.

Prosecutorial misconduct claims are mixed questions of law and fact that this court reviews de novo. United States v. Henry, 545 F.3d 367, 376 (6th Cir. 2008); United States v. Green, 305 F.3d 422, 429 (6th Cir. 2002).

**B.    Requesting that the district court find a witness to be an expert was not flagrant serious behavior constituting reversible prosecutorial misconduct.**

Majors has fallen far short of demonstrating that a single isolated remark constituted prosecutorial misconduct requiring reversal.  This court employs a two-step inquiry to determine whether prosecutorial misconduct has occurred.  United States v. Francis, 170 F.3d 546, 549 (6th Cir. 1999).  First, it considers whether a prosecutor's statement or conduct was improper.  Id.  If so, then it determines whether it was so "flagrant" as to require reversal.  Id.  This Court considers four factors when evaluating flagrancy: (1) whether the prosecutor's remarks or conduct tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were accidentally or deliberately made; and (4) the overall strength of the evidence against the accused.  Id. at 549-50.

The government agrees that the prosecutor should not have requested that the district court certify its witness as an expert.  In United States v. Johnson (Michael), 488 F.3d 690, 697-98 (6th Cir. 2007), this Court stated that counsel should not ask a district court to declare that a witness is an expert in the jury's presence, because it could inordinately enhance the witness's stature or detract from the court's neutrality and detachment.  Id.  The prosecutor here asked the

court to do so, contrary to <u>Johnson</u>'s instructions. (R. 77: Alcantara Trans., PageID 737). Thus, the request was improper.

It was not, however, flagrant. There was no risk that the conduct misled the jury or prejudiced the defendant. In response to the prosecutor's question, the court did not certify Alcantara as an expert or do anything that would enhance his stature. Instead, it merely instructed the prosecutor to proceed. (<u>Id.</u>). The court's brief, neutral statement did not affect its impartiality or detachment. The court said nothing to make it appear that it endorsed Alcantara's testimony. The government never referred to Alcantara as an expert during its closing argument or rebuttal closing, either. Moreover, during the jury instructions, the court avoided referring to Alcantara as an expert witness. (R. 78: Jury Instructions, PageID 935). Because Alcantara testified both as fact and opinion witness, the court cautioned the jury that it did not have to accept his opinions. (<u>Id.</u>). Clearly, the jury was not prejudiced—it acquitted Majors of two of the counts against him. Thus, the prosecutor's comment did not mislead the jury or prejudice Majors, particularly when viewed in conjunction with the district court's response and its later instructions.

Further, this was an isolated incident. The government did not refer to Alcantara as an expert witness at any other time during his testimony. (R. 77: Alcantara Trans., PageID 732-92). It also did not refer to him in that fashion in

either its closing argument or its rebuttal argument. (R. 78: Government Closing, PageID 954-67; R. 78: Rebuttal Closing, PageID 973-81). When it did refer to Alcantara's testimony, it did so appropriately. (R. 78: Government Closing, PageID 959-61, 963; R. 78: Rebuttal Closing, PageID 976). The record shows that this was a single, isolated mistake; not an extensive one that pervaded any portion of the trial.

The record does not show whether this was a deliberate or accidental mistake. Majors did not raise a prosecutorial misconduct claim in district court, so the court did not make any inquiry or make any findings on this topic. Thus, this factor is neutral.

Finally, the strength of the evidence in the case weighs against reversal. Evidence that Majors possessed the drugs in the car was strong. He admitted to possessing both the crack cocaine and the heroin/fentanyl mixture that was inside the hidden compartment of the aerosol can. (R. 78: Majors Trans., PageID 897-98, 901). While he denied possessing the methamphetamine, it was found in his car, in the hidden compartment of a lint roller, like the hidden compartment of the aerosol can. (R. 77: Falzini Trans., PageID 689; R. 77: Baon Trans., PageID 720-21). There was no one else in the car, so it was reasonable to conclude that Majors possessed the methamphetamine. He also admitted possessing both firearms that were in the car. (R. 78: Majors Trans., PageID 893-94).

There also was strong evidence that Majors intended to distribute the drug that he possessed. The government can prove that a defendant had the intent to distribute narcotics with circumstantial evidence. United States v. Mackey, 265 F.3d 457, 460 (6th Cir. 2001). Intent to distribute can be inferred from the quantity and value of the drugs. United States v. Hall (Clayton), 20 F.4th 1085, 1106-07 (6th Cir. 2022); United States v. Hill, 142 F.3d 305, 311 (6th Cir. 1998). "Intent to distribute can be inferred from the possession of a large quantity of drugs, too large for personal use alone." United States v. Jackson, 55 F.3d 1219, 1226 (6th Cir. 1995). Further, a jury can infer a defendant's intent to distribute from the presence of drug-trafficking tools. Hill, 142 F.3d at 311-12. This Court has found that a jury may infer intent to distribute from the presence of a scale commonly used to weigh drugs and a firearm commonly used for protection. United States v. Rodriguez, 882 F.2d 1059, 1063 (6th Cir. 1989).

Such evidence was all present here. The methamphetamine was packaged in 17 individual bags, strongly suggesting that it was packaged for distribution. United States v. Balogun, 463 F. App'x 476, 485 (6th Cir. 2012) (presence of small bags used in drug distribution supported inference that defendant possessed the intent to distribute). While the drug quantity itself was not large enough that, alone, it would support a finding that it was possessed for trafficking, see, e.g., Jaffal, 79 F.4th at 606, Majors did have other items consistent with trafficking,

including scales, firearms, and multiple cellphones.  (R. 77: Falzini Trans., PageID 691-95).  And Majors admitted that he had previously distributed drugs to others. (R. 78: Majors Trans., PageID 867-70, 886).  Given the strength of this evidence, one improper remark does not rise to the level of reversible prosecutorial misconduct.

In similar circumstances, this Court has previously declined to reverse a conviction, even though the government asked the district court to certify a law enforcement officer as an expert witness.  In United States v. King, 339 F. App'x 604, 610 (6th Cir. 2009), the government asked the district court to declare an investigator as an expert in the field of narcotics investigations.  Over the defendant's objection and in the jury's presence, the court did so.  Id.  It stated that it would "treat him as an expert."  Id.  Even though the precise harm that Johnson sought to avoid occurred, this Court declined to reverse, finding that the error was harmless.  Id. at 611-12.  It concluded that the district court's designation was not pervasive, and there was overwhelming evidence of guilt.  The circumstances here are less serious than in King.  The trial judge here declined to declare Alcantara to be an expert, thus avoiding the harm that this Court sought to address in Johnson.

Asking the court to declare the witness to be an expert did not rise to the level of prosecutorial misconduct.  It was a single isolated remark that occurred during a three-day trial.  The government did not refer to the witness as an expert

at any other point during its examination or the closing arguments.  Given the

strength of the evidence in this case, reversal is unwarranted.

## IV. <u>Cumulative errors do not require a new trial.</u>

Because Majors has not demonstrated that the district court committed any

individual errors, his claim of cumulative error necessarily fails, as well.  To obtain

a new trial based upon cumulative errors, a defendant must show that the combined

effect of individually harmless errors was so prejudicial as to render his trial

fundamentally unfair.  <u>Trujillo</u>, 376 F.3d at 614.  This analysis only considers

actual errors, not "the cumulative effect of non-errors."  <u>Id.</u> (citing <u>United States v.</u>

<u>Rivera</u>, 900 F.2d 1462, 1471 (10th Cir. 1990)).  Thus, where there are no actual

errors, cumulative-error claims also fail.  <u>United States v. Robinson</u>, 357 F. App'x

677, 688-89 (6th Cir. 2009).

For the reasons stated above, the government believes that no errors

occurred, and therefore, this issue lacks merit.  The only matter that could even be

considered an error was the government's request for the court to declare TFO

Alcantara to be a drug-trafficking expert.  (R. 77: Alcantara Trans., PageID 737).

Based on this Court's holding in <u>Johnson</u>, 488 F.3d at 697, the prosecutor should

not have done so.  But even if a prosecutor asks improper questions or makes

improper statements before the jury, where such conduct was isolated and the

evidence was otherwise strong, this Court previously declined to grant new trials

based on this type of claim.  United States v. Dickens, 438 F. App'x 364, 375-76

(6th Cir. 2011); see also United States v. Goins, 186 F. App'x 586, 589-90

(6th Cir. 2006) (rejecting new trial based on cumulative error, even though

government asked approximately 18 questions that led to improper hearsay

evidence).

As stated above, the prosecutor's remark did not rise to the level of

reversible prosecutorial misconduct, because it was a single isolated incident

during a three-day trial with strong evidence of guilt.  Because Majors has not

demonstrated that any other errors occurred, his cumulative-error claim fails, as

well.

## V.     **The district court properly included two criminal history points because Majors was on probation when he committed his federal crimes.**

### A.     **Standard of Review.**

This Court reviews a defendant's sentence for reasonableness, using an

abuse-of-discretion standard.  Gall v. United States, 552 U.S. 38, 51 (2007).

United States v. Jeross, 521 F.3d 562, 569 (6th Cir. 2008).  Reasonableness review

has both substantive and procedural components.  United States v. Donadeo,

910 F.3d 886, 893 (6th Cir. 2018).  Procedural reasonableness "requires the court

to 'properly calculate the guidelines range, treat that range as advisory, consider

the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering

impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence.'" United States v. Parrish, 915 F.3d 1043, 1047 (6th Cir. 2019) (quoting United States v. Rayyan, 885 F.3d 436, 440 (6th Cir. 2018)).

This Court reviews a district court's legal conclusions regarding Guidelines calculations de novo. United States v. Wheeler, 330 F.3d 407, 411 (6th Cir. 2003). This includes the calculation of the criminal history score. United States v. Hall (Frank), 531 F.3d 414, 416 (6th Cir. 2008).

### B. Majors could not collaterally attack the validity of his state probation in his federal sentencing hearing.

The district court properly rejected Majors' attempt to collaterally attack his state probation at his federal sentencing hearing. Precedents from the Supreme Court and this Court establish that a federal sentencing hearing is not the proper forum for such challenges.

In a federal sentencing proceeding, a criminal defendant may only attack a prior conviction's validity if it was uncounseled. Absent a claim that the previous conviction was uncounseled, or a federal statute permitting a challenge, such as 21 U.S.C. § 851(c), a defendant may not collaterally attack a prior conviction in a federal sentencing proceeding. Custis v. United States, 511 U.S. 485, 487 (1994); see also United States v. Bonds, 48 F.3d 184, 186-87 (6th Cir. 1995) (applying

Custis rule to Guideline calculations in a non-ACCA context). If Majors wished to collaterally attack his probationary term, he was required to do so in state court. But he did not do so.

Majors' challenge is similar to one that this Court rejected in United States v. Aguilar-Diaz, 626 F.3d 265, 266-67 (6th Cir. 2010). There, the defendant argued that a previous conviction was void because the state court failed to impose a post-release control term, and therefore, the district court could not assess criminal history points for it. Although state Supreme Court precedents arguably supported this claim, this Court nevertheless found it to be an impermissible collateral attack on a state conviction. Id. at 269-70. Relying on Custis, this Court held that right-to-counsel violations were the sole non-statutory ground on which a district court could consider a collateral attack at sentencing. Id. It further held that the defendant was required to seek relief in state court if he truly believed his conviction was void, and a federal sentencing hearing was not the appropriate forum. Id.

Even if Majors' claim were not legally barred, it would not succeed because the record does not support it. Although he claims that he remained on probation only because he failed to pay financial penalties, the PSR says otherwise. According to the PSR, Majors had not appeared for court proceedings relating to his probation, and therefore, a warrant was issued for his arrest in February 2019.

(R. 64: Final PSR, PageID 356). He remained on probation and failed to appear until after his arrest in the present case. (Id.). Majors did not object to this statement in the PSR. Nothing in the PSR supports Majors' contention that he remained on probation only because he failed to pay financial penalties. At sentencing, the district court was not required to accept Majors' unsupported argument, which contradicted the PSR. Because Majors presented no evidence to support his claim, the district court properly rejected it.

Majors fell short of demonstrating that his probationary term was illegal based on the Supreme Court's holding in Bearden v. Georgia, 461 U.S. 660 (1983). There, the Supreme Court held that where a fine or restitution is the appropriate penalty for a crime, "it may not thereafter imprison a person solely because he lacked the resources to pay it." Id. at 668. The Court noted that a person's reason for non-payment was of "critical importance" in the analysis. Where a person willfully refuses to pay when he has the means to do so, or fails to make bona fide efforts to obtain gainful employment, the state may revoke probation and impose imprisonment as an appropriate penalty. Id. at 668-69.

Majors did not prove to the district court that he met these stringent requirements. To the contrary, his PSR states that his probation was continued due to a warrant for failing to appear for a court hearing. (R. 64: Final PSR, PageID 356). That is what distinguishes Majors' case from United States v. Parks, 89 F.3d

36

570 (9th Cir. 1996). There, it was undisputed that the defendant's failure to pay a fine and costs kept him on state probation, and the record did not show lack of willfulness. Id. at 572-73. Here, by contrast, the record shows that it was Majors' failure to appear for a court hearing—and not a lack of resources—is what extended the term of his probation. Thus, even if this Court permitted collateral challenges to previous convictions—which it does not—Majors' claim would fail. See Bonds, 48 F.3d at 186-87; Aguilar-Diaz, 626 F.3d at 269-70.

Majors was on probation when he committed the instant offense. Based on the Guidelines in effect at the time of his sentencing, the district court properly added two criminal history points. U.S.S.G. § 4A1.1(d) (2018).[1] Therefore, this Court should reject his attack on his sentence.

---

[1] Due to subsequent changes to the Sentencing Guidelines, those points would not be assessed today. See U.S.S.G. § 4A1.1(e) (2023). Majors may be eligible to request sentencing modification in district court. See 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10(d) (2023).

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should affirm the convictions and

sentence in this case.

Respectfully submitted,

REBECCA C. LUTZKO
United States Attorney

By:    /s/ Matthew B. Kall
Matthew B. Kall
Assistant U.S. Attorney
801 West Superior Avenue, Suite 400
Cleveland, OH  44113
(216) 622-3915
Matthew.B.Kall@usdoj.gov

Counsel for Plaintiff-Appellee

## CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION

I hereby certify that the foregoing contains 7,892 words according to the word-counting feature of Microsoft Word for Office 365 and complies with this Court's 13,000-word limitation for briefs.

/s/ Matthew B. Kall
Matthew B. Kall
Assistant U.S. Attorney

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT
## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 30(b), the government designates the

following district court filings as relevant to this appeal:

| DESCRIPTION OF ENTRY | RECORD ENTRY NO. | PAGE ID RANGE |
| --- | --- | --- |
| Docket Sheet, Northern District of Ohio, Case No. 1:22-CR-124 | N/A | N/A |
| Indictment | 1 | 1-4 |
| Notice of Fact and Expert Witness | 42 | 150-58 |
| Trial Brief | 47 | 186-202 |
| Verdict | 59 | 309-14 |
| Final PSR | 64 | 347-70 |
| Majors Sentencing Mem. | 66 | 377-82 |
| Judgment | 69 | 395-401 |
| Notice of Appeal | 71 | 406 |
| Sentencing Trans. | 74 | 409-33 |
| Trial Transcript, February 1, 2023 | 76 | 503-646 |
| Trial Transcript, February 2, 2023 | 77 | 647-832 |
| Trial Transcript, February 3, 2023 | 78 | 833-1001 |